24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lopez GARCIA (Ignacio), aka Rudy, aka Juan Manuel Reyes, aka
Luis E. Duran, Defendant-Appellant.
 No. 93-30218.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1994.
Decided May 9, 1994.
As Amended June 17, 1994.
 
 Before: WRIGHT, SCHROEDER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ignacio Lopez-Garcia ("Lopez-Garcia") challenges his convictions on two counts of narcotics possession in violation of 21 U.S.C. Sec. 841(a)(1), one count of possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c), and one count based upon the underlying drug trafficking conspiracy in violation of 21 U.S.C. Sec. 846. He claims that the evidence adduced at trial was insufficient to support these convictions.
 
 
 3
 There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence and inferences drawn from it may be sufficient. United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). Reviewing the evidence against Lopez-Garcia in this fashion, we find that it supported the convictions.
 
 
 4
 Parties to an unlawful conspiracy may be convicted of foreseeable substantive offenses committed by co-conspirators in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 647 (1946). Such criminal liability applies even to convictions for possession of a firearm during a drug trafficking crime. 18 U.S.C. Sec. 924(c); United States v. Johnson, 886 F.2d 1120, 1123 (9th Cir.1989), cert. denied, 494 U.S. 1089 (1990). Thus, Lopez-Garcia's convictions here are supported by the evidence as long as it established the conspiracy and the commission of the three substantive offenses by his alleged co-conspirator, Demetrio Salgado-Malfavon ("Salgado").[1]
 
 
 5
 At least seven witnesses testified at trial that they had purchased heroin and/or cocaine from Lopez-Garcia for at least several years prior to his arrest in April 1992. Several stated additionally that Lopez-Garcia and Salgado worked together, that they and a number of "runners" responded to the same pager and would trade off duties of delivering narcotics to buyers, that Lopez-Garcia had asked customers to rent houses to serve as new bases for his trafficking after the raid on the Tukwila house, and that Salgado and other runners for the pair had told them that Lopez-Garcia headed the operation. Lopez-Garcia was identified as the purchaser, for cash, of six automobiles from which surveillance agents subsequently observed members of the operation making deliveries. With respect to Salgado's Tukwila house raided in January 1992, evidence showed that Lopez-Garcia had recently paid the rent, that he received mail there in December 1991, that until November 1991 the telephone was in one of Lopez-Garcia's known aliases, that numerous documents in his name or aliases were discovered inside, and that one witness testified that Lopez-Garcia had told her he kept a room in the house.
 
 
 6
 The evidence is thus more than sufficient to establish the essential elements of conspiracy: agreement, overt acts, and intent. United States v. Litteral, 910 F.2d 547, 550 (9th Cir.1990). It remains for us to decide whether there was sufficient evidence to convict the co-conspirator Salgado of the drug and weapons possession crimes.
 
 
 7
 Testimony and physical evidence introduced at trial showed that police found three loaded and operable handguns in the master bedroom when they raided the house. Co-conspirator Maria Cabadas was holding one as she hid in the closet of that room. Another was on the nightstand, and the third was on the floor under the bed. Identification documents belonging to Salgado were on the dresser. An attic crawl space above Salgado's bedroom contained eleven ounces of heroin and 370 grams of cocaine, mostly packaged for distribution, along with more than $20,000 in cash and a precision scale. Two witnesses testified that they had purchased narcotics from Salgado (and Lopez-Garcia) at the residence only weeks before the raid. In addition, one witness testified that, only hours before the raid, Salgado and Cabadas had both held him in the house at gunpoint while discussing the return of drugs and a pager the witness had earlier stolen from Salgado. Finally, an experienced narcotics agent testified that traffickers often keep firearms close at hand in order to protect themselves and their inventory.
 
 
 8
 As this court stated in United States v. Disla, 805 F.2d 1340 (9th Cir.1986), "[p]ossession of a controlled substance ... may be constructive, as well as actual." Id. at 1350 (internal quotation and citation omitted). Possession is established by "direct or circumstantial evidence that the defendant had the power to dispose of the drug." Id. Most broadly, "[t]he ultimate question is whether ... the evidence establishes a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance." Id. We hold that the evidence here dictates an answer in the affirmative.
 
 
 9
 Similarly, the close proximity of the weapons to the narcotics represented evidence of their relation to the offense of narcotics possession. This court has already affirmed the conviction of Salgado for possessing the firearm in relation to a drug trafficking activity. United States v. Salgado-Malfavon, No. 93-30053 (9th Cir. Sept. 16, 1993). The availability of the guns to Salgado (and Cabadas) represented evidence of their use, even though Salgado did not possess any of the guns or have them within close reach when arrested. We have held such evidence sufficient to prove a violation of Sec. 924(c)'s two elements: relation and use. United States v. Torres-Medina, 935 F.2d 1047, 1048-50 (9th Cir.1991). Even without such evidence, the direct evidence from one witness as to Salgado and Cabadas's gun use would have sufficed. Again, we hold that a rational trier of fact could have concluded that the evidence amply established Salgado's guilt with respect to firearms possession in relation to his drug-trafficking crimes.
 
 
 10
 Lopez-Garcia could readily have foreseen that his co-conspirator would commit all three crimes, which were undoubtedly in furtherance of the conspiracy. As a result, Lopez-Garcia's convictions are affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government argues that the evidence also supports the narcotics possession convictions on the basis of direct liability. Since we affirm on the Pinkerton basis, we do not reach this question